## Superior Coal Company, Appellee, v. E. R. Darlington Lumber Company, Appellant.

CONTRACTS—*when not in restraint of trade.* A contract is not in restraint of trade by which one agrees to buy out a particular coal merchant and then to buy coal at wholesale from the other party to the contract, in consideration of which such second party obligates himself not to sell coal at wholesale to any other dealer at the place in question, it not appearing that the output of any other wholesale dealer or purchaser of coal was in anywise involved, limited or affected or that there was anything in the contract to establish the price of coal to be sold at the place in question.

Assumpsit. Appeal from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the November term, 1907. Affirmed. Opinion filed April 21, 1908.

C. C. TERRY and WELTY, STERLING and WHITMORE, for appellant.

RINAKER & RINAKER, for appellee.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Appellee brought suit in the Circuit Court of Macoupin county against appellant to recover for coal sold and delivered and filed a declaration consisting of the common counts. Appellant filed special pleas in which it set up that it was a dealer in coal and lumber at Benld, Illinois, and other places, its coal business being to buy coal at wholesale and to sell the same at retail, while the business of appellee was to mine and sell coal; that appellee and appellant entered into an agreement to the effect that if appellant would buy out one Pryor, then selling coal at Benld, and would buy coal at wholesale from appellee and sell the same at Benld, that appellee would not sell its coal so mined by it to any other retail dealer in coal at that place; that in pursuance of said agreement appellant began

to carry on the coal business at said Benld; that without such agreement appellant would not have commenced buying at wholesale from appellee and selling its coal at retail at that place; that the coal for which appellee sought to recover was coal sold by appellee to appellant, and in pursuance of said agreement; that coal was an article of necessity and that the purpose of the said contract was to prevent and limit competition in the sale of coal and was therefore contrary to public policy and void.

A demurrer was sustained to the pleas, whereupon appellant elected to stand by its pleas. There was a judgment in favor of appellee in the sum of $1,343.32, from which this appeal is prosecuted.

In brief, by the contract as stated in the pleas, it was agreed that if appellant would buy out one Pryor, at Benld, and would then buy from appellee at wholesale, coal which it would sell at Benld, appellee would not sell at wholesale to any other dealer in coal at that place.

Appellant contends that the contract set up in the pleas is contrary to public policy and void; that no cause of action can grow out of the same and cites Arnot v. Coal Co., 68 N. Y. 558, as a leading case in support of that claim. In that case two rival coal mining companies of Pennsylvania entered into a stipulation which, in effect, provided that one of such rival companies should take, of the coal of the other, at a certain price, per ton, all that such other company shipped north of the south line of the state of New York for the purpose of keeping all the coal of the selling company out of the state of New York, except that taken by the buying company and thus artificially enhance the price of coal at Elmira, which was the chief market for coal in western New York and where prices of coal were established for an extensive district. That case is very different from the one before us. In the case cited there was a contract between rival coal producers made for the express purpose of

creating a fictitious price, while under the terms of the contract here involved, the output of any other wholesale dealer or producer of coal was in no way involved, limited or affected, nor was there anything, in the contract, to establish the price of coal to be sold at Benld; neither does it appear from any averment in the pleas that the price of coal was, in fact, affected, nor did the contract forbid appellant buying, at that place, coal from parties other than appellee. The producer of a particular commodity or grade of coal agreed to sell that commodity at wholesale to one retail dealer at Benld and to give to that retail dealer the exclusive right to sell such product at that place. Manufacturers and producers of particular kinds or grades of commodities quite generally adopt the method of selling to only one merchant or dealer in a town or village where their goods are sold and we fail to see how it can be said to be against public policy for them to do so. If it is against public policy for a producer of a particular commodity to limit the places of sale of such commodity in cities and villages then in order to recover upon a contract for the sale of his particular product he must, before he makes his contract for selling, have offered to sell his commodity to every dealer in such city or village engaged in that line of trade. This does not seem to be a reasonable interpretation of the law.

In Brown v. Rounsavell, 78 Ill. 589, it was held that a contract to furnish for sale a certain make of sewing machines which provided that the dealer should engage in selling the kind of machines contracted for and no other, and to buy of the party then furnishing them and no other, was not in restraint of trade.

In Weiboldt v. Standard Fashion Co., 80 Ill. App. 70, it was held that a contract, which provided that a local dealer should sell no other patterns than those furnished by the seller at only the price fixed by the seller was not against public policy.

In Newell v. Meyendorff, 9 Mont. 254 (18 Am. State

Rep. 738), it was held that a contract by "A" to give "B" the sole and exclusive right to sell and deal in a certain brand of cigars in the state, "A" not to sell said brand of cigars to anyone else in that state, in consideration whereof "B" contracted to cease to advertise and sell all other brands of cigars and purchase cigars from "A," was not void as being in restraint of trade.

The contract set up in appellant's pleas was not, in our judgment, against public policy and void on that account.

The demurrer was properly sustained and the judgment is affirmed.

*Affirmed.*